**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 11 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

SH.A., as Parent and Next Friend of
J.A., a minor child, and S.A., as Parent
and Next Friend of R.A., a minor
child,

      Plaintiffs - Appellees,

v.

TUCUMCARI MUNICIPAL
SCHOOLS; THE BOARD OF
EDUCATION OF THE TUCUMCARI
MUNICIPAL SCHOOLS; FELIX R.
JIMENEZ, Superintendent of the
Board of Education of the Tucumcari
Municipal Schools; EDWARD
ENCINIAS; KELLY MCFARLAND;
JOAN DENTON; REX KIRKSEY;
MARCELLO VALVERDE, in their
capacity as members of the Board of
Education of the Tucumcari Municipal
Schools; ALLIE PELAYO,
individually and as Principal of
Granger Elementary School,

      Defendants,

      and

ERNEST F. DOMINGUEZ,

      Defendant - Appellant.

No. 02-2108

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-00-727-JP/DJS)**

Kevin M. Brown (Daniel J. Macke, with him on the briefs), of Brown & German, Albuquerque, New Mexico, for Defendant-Appellant.

M. Clea Gutterson, of Civerolo, Gralow & Hill, Albuquerque, New Mexico, for Plaintiffs-Appellees.

Before **SEYMOUR**, **EBEL** and **BRISCOE**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

This is a civil rights action brought on behalf of two male children, J.A. and R.A., against, *inter alia*, Ernest F. Dominguez, a teacher at their elementary school. The district court denied Mr. Dominguez' motion for summary judgment based on qualified immunity. We affirm.

## I

The facts underlying this litigation are essentially undisputed. The conduct at issue began in the spring of 1997 and continued through the spring of 1998. During the 1996-97 school year, plaintiff J.A. was a fifth grader and became a student in Mr. Dominguez' language arts class when Mr. Dominguez began

teaching in the spring of 1997. In 1998 Mr. Dominguez tutored both J.A. and R.A. in mathematics. During class and tutoring sessions, Mr. Dominguez put his hand down the inside of the boys' shirts and rubbed their chests and backs, and put his hand under their shorts and rubbed their legs from mid-thigh almost up to the point where their legs joined their bodies. This conduct occurred repeatedly in J.A.'s class room with other children present and almost every time the boys were tutored. Mr. Dominguez did not fondle their nipples, or touch their genitals or buttocks. He did not say anything to the children, or threaten them or warn them not to tell anyone about what he was doing. J.A. stopped attending the tutoring sessions as a result of Mr. Dominguez' conduct and ultimately told his parents about it. R.A. stopped going to the sessions after his father walked in while Mr. Dominguez was rubbing his son. R.A. stated that the touching on his leg and down his shirt "felt bad," Aplt. App. at 69, and both boys often pushed Mr. Dominguez' hand away from their bodies.

This lawsuit was filed against Mr. Dominguez as well as the Tucumcari Municipal Schools, the Tucumcari Board of Education, the School Board superintendent, the members of the School Board, and the principal of a Tucumcari elementary school. The complaint asserts common law and federal civil rights violations arising out of the alleged sexual molestation of the boys by Mr. Dominguez. Plaintiffs allege state law claims against Mr. Dominguez for

battery and infliction of emotional distress, and constitutional claims against him for deprivation of due process and equal protection.

Mr. Dominguez moved for summary judgment on the ground that he was entitled to immunity on all claims. He argued that the New Mexico Tort Claims Act (TCA) does not waive immunity for claims of battery or infliction of emotional distress in the instant circumstances, and that he was entitled to qualified immunity on the constitutional claims because the facts alleged do not rise to the level of a constitutional violation. The district court concluded that at the time of the alleged molestation, Mr. Dominguez was acting within the scope of his teaching duties as interpreted under the TCA and that he was therefore immune from the state claims of battery and infliction of emotional distress. Accordingly, the court granted Mr. Dominguez' motion as to those claims. The court also concluded that Mr. Dominguez was entitled to qualified immunity with respect to the claim that he violated the children's constitutional right to substantive due process. After reviewing the case law, the court determined that such claims have only been sustained when the facts involved were "remarkably more egregious than the facts of this case." Aplt. App. at 152.

The court reached a different result with respect to the allegation that Mr. Dominguez violated the children's constitutional right to equal protection. The court concluded that the standard of conduct required to state an equal protection

claim is less demanding than the conscience-shocking standard applicable to a substantive due process claim, and that to state an equal protection claim plaintiffs' evidence must tend to show that Mr. Dominguez' conduct was an abuse of his authority for the purpose of his own sexual gratification. The court determined plaintiffs had made such a showing and that Mr. Dominguez was therefore not entitled to qualified immunity on the equal protection claim. Mr. Dominguez appeals.

## II

We review the denial of qualified immunity on summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *See Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998).

> The framework for analyzing claims of qualified immunity on summary judgment is well settled. Once a defendant pleads qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right and (2) demonstrating that the right violated was clearly established at the time of the conduct at issue.

*Id.*

> [T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question.

*County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). *See also Lybrook*

*v. Members of the Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1337-38 (10th Cir. 2000). "In order to carry his burden, the plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it. Rather, the plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity. . . ." *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995) (citation omitted).

> For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Plaintiff is not required to show that the very conduct in question has previously been held unlawful. She is, however, required to demonstrate the unlawfulness was "apparent" in light of established law. Generally, this requires that the plaintiff demonstrate a "substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited."

*Baptiste*, 147 F.3d at 1255-56 (citations omitted).

## III

In denying Mr. Dominguez' request for qualified immunity, the district court held that

> "the right of school children to be free from sexual harassment by their teachers was firmly established in this circuit at the time of the alleged violations, and that a violation of that right can be redressed through the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution under 42 U.S.C. § 1983."

Aplt. App. at 197. The court further concluded that the severity of the conduct in question rose to the level of a constitutional violation. In reaching this conclusion, the court relied on Tenth Circuit authority holding that an official's abuse of authority for purposes of his own sexual gratification may violate the Equal Protection Clause, citing *Johnson v. Martin*, 195 F.3d 1208, 1217-18 (10th Cir. 1999).

Mr. Dominguez contends the district court erred in concluding that the contours of an equal protection claim by a student on the basis of sexual harassment by a teacher were clearly established in 1997 and 1998 when the conduct at issue took place. Mr. Dominguez concedes, as he must, that the law holding that sexual harassment is actionable as an equal protection violation has long been clearly established. *See, e.g.*, *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989) (sexual harrassment equal protection claim upheld in employment context). However, he maintains that the court erred in drawing upon the standard set out in employment cases and applying it to teacher-on-student sexual harassment. He argues that he is entitled to qualified immunity because no opinion by the Tenth Circuit had announced the standard applicable to this particular type of sexual harassment, nor had the weight of authority from other circuits done so.

Mr. Dominguez' argument asks this court to require exact correspondence

between prior cases and the instant facts. Significantly, we rejected a similar argument made by the defendants in *Johnson*, the case relied upon by the district court.

> [W]e have recently recognized that the concept of clearly established law should not be applied too literally. Thus, "[w]e have never said that there must be a case presenting the exact fact situation at hand in order to give parties notice of what constitutes actionable conduct." Instead, we merely require the parties to make a reasonable application of existing law to their own circumstances.

*Johnson*, 195 F.3d at 1216 (citations omitted).

In *Johnson*, the plaintiffs, nonemployee citizens of a city, brought an equal protection claim against the city's building code director and other city officials alleging that the director used his position to sexually harass them. The defendants contended they were entitled to qualified immunity because the law was not clearly established at the relevant time that a public official who used his position to harass a nonemployee violated the Equal Protection Clause.

We disagreed with the defendants' assertion that cases involving harassment in the employment context could not provide the required clearly established law with respect to a claim by a nonemployee. In so doing, we held that even though the prior cases

> all involve alleged sexual harassment in an employment setting, we are not convinced that . . . the law was unclear as to whether a public employee could be held liable for using governmental authority to sexually harass a nonemployee. There is no indication in those decisions that a public official's abuse of governmental authority in

furtherance of sexual harassment in the employment setting is fundamentally different than when the abuse of authority occurs outside the workplace.

*Id.* at 1217. We pointed out the "obvious proposition that public officials frequently exercise governmental authority in many ways not involving their authority over subordinate employees," and concluded that during the relevant time period, which began in 1982 in that case, "a public official's reasonable application of the prevailing law would lead him to conclude that to abuse any one of a number of kinds of authority for [the] purpose of one's own sexual gratification . . . would violate the Equal Protection Clause." *Id.* at 1218. Our conclusion in *Johnson* that cases in the employment context provide clearly established law in the nonemployment context is equally applicable here.

Support for *Johnson*'s holding can be found in *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60 (1992), in which a high school student brought a Title IX action for alleged gender-based discrimination arising from alleged sexual harassment and abuse by a school sports coach and teacher. In holding that the implied right of action under Title IX supported a claim for monetary damages, the Supreme Court pointed out that "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." *Id.* at 75 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). The Court then stated its belief that "the same rule should apply

when a teacher sexually harasses and abuses a student." *Id.* Thus the Court clearly indicated in 1992 that the same sexual harrassment standards apply in both the employment context at issue in *Meritor* and in the teacher-on-student sexual harassment at issue in *Franklin.*

In light of *Johnson* and *Franklin*, we conclude that a reasonable teacher would have known in the spring of 1997 that sexual harassment which gives rise to a violation of equal protection in the employment context will also do so in the teacher-on-student context. As *Johnson* sets out, it was then clearly established that this standard is met by actions that amount to an abuse of governmental authority for the purpose of one's own sexual gratification. *See Johnson*, 195 F.3d at 1218. Mr. Dominquez does not argue that his conduct fails to meet that standard; he contends instead that the lack of case law specifically addressing an equal protection claim arising from sexual harassment in the schoolroom entitles him to qualified immunity. Given clear authority holding sexual harassment actionable in the workplace as a denial of equal protection and further holding that employment cases provide clearly established law outside the workplace environment, and with respect to teacher-on-student harassment in particular, his argument is without merit. The district court appropriately denied qualified immunity to Mr. Dominguez.

We **AFFIRM**.