Sabrina **BECERRA, a minor, Natural Dependent Daughter and Legal Heir of Aaron M. Becerra, Deceased, by and through her Natural Mother, Legal Guardian and Next Friend, Angela Perez, et al., Plaintiffs,**

v.

**UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, Kansas, et al., Defendants.**

No. 02–2492–DJW.

United States District Court,
D. Kansas.

July 25, 2003.

Daniel J Cohen, The Lakin Law Firm, Wood River, IL, Davy C. Walker, Kansas City, KS, for Angela Perez.

Michael W. Shunk McCormick, Adam & Long, P.A., Overland Park, KS, for Kansas City, Kansas Fire Department.

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

This lawsuit arises out of a collision between an automobile driven by Aaron M. Becerra ("Becerra") and a fire engine owned by the Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government") and operated by Unified Government employee Anthony Mots ("Mots"). Plaintiffs[1] allege that Becerra died as a result of injuries sustained in the collision.

Plaintiffs' cause of action is set forth in four separate counts. Count one is Kansas state law tort claim. In counts two, three and four, Plaintiffs claim Defendants

---

1. The Plaintiffs in this matter are Sabrina Becerra, the decedent's daughter, and Hector Becerra, decedent's father. Hector Becerra sues both in his individual capacity and as representative of Becerra's estate.

are liable under 42 U.S.C. § 1983 because they violated Becerra's substantive due process rights by recklessly and/or intentionally exposing Becerra to an unreasonable risk of harm. Plaintiffs claim Defendants' actions as pled in the Complaint are sufficient to meet the "shock the conscience" standard applicable to section 1983 substantive due process claims.

Defendants disagree and have filed a Motion for Judgment on the Pleadings (doc. 18) seeking dismissal of all section 1983 claims based on failure to state a claim for relief. Also pending is Plaintiffs' Motion for Leave to File First Amended Petition (doc. 31). For the reasons stated below, Plaintiffs' request to file a First Amended Complaint will be granted and Defendants' Motion for Judgment on the Pleadings will be granted in part and denied in part.

## I. *Plaintiffs' Motion for Leave to File First Amended Petition*

Plaintiffs maintain they need to file a First Amended Complaint in order to include additional factual detail in response to the specific claim of qualified immunity alleged within Defendants' Motion for Judgment on the Pleadings. Defendants oppose the motion on grounds that Plaintiffs unduly delayed in bringing the motion. More specifically, Defendants contend the Court's scheduling order in this matter sets forth a March 12, 2003 deadline for amendment of pleadings and Plaintiffs did not file their motion until May 12, 2003, two months after the deadline. Defendants assert such untimeliness is not

justified given the issue of qualified immunity was raised by Defendants in their Answer.

## A. Applicable Law

■ Rule 15 of the Federal Rules of Civil Procedure allows one amendment of the complaint before a responsive pleading is served or within twenty days after service of the complaint; subsequent amendments are allowed only by leave of court or by written consent of the adverse party.[2] Leave to amend, however, is to be "freely given when justice so requires," and the Supreme Court has emphasized that "this mandate is to be heeded."[3] The decision to grant leave to amend a complaint, after the permissive period, is within the trial court's discretion and will not be disturbed absent an abuse of that discretion.[4]

■ Leave to amend should be denied when the court finds "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[5] In addition, the court may consider the timeliness of the motion to amend. Untimeliness of the motion is, by itself, a sufficient reason to deny leave to amend, particularly when the movant provides no adequate explanation for the delay.[6] In addition, if the motion is filed after the scheduling order deadline, the moving party must show good cause for allowing the amendment out of time.[7] To establish good cause, the moving party must show that the deadline "could not have been met with diligence."[8]

---

**2.** Fed.R.Civ.P. 15(a).

**3.** *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

**4.** *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir.1991).

**5.** *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993).

**6.** *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1495 (10th Cir.1995).

**7.** *SIL–FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518 (10th Cir.1990).

**8.** *Simpson v. Home Depot, Inc.*, 203 F.R.D. 643, 644 (D.Kan.2001) (quoting *Denmon v. Runyon*, 151 F.R.D. 404, 407 (D.Kan.1993)).

## B. Discussion

Plaintiffs argue their motion to amend was timely filed under the circumstances presented. More specifically, Plaintiffs argue it was not until after Defendants filed their March 31, 2003 motion to dismiss that Plaintiffs were able to determine it was necessary to amend their Complaint in order to address and respond to Defendants' specific qualified immunity affirmative defense. Plaintiffs maintain the only reason they filed their motion to amend after the March 12, 2003 deadline set in the scheduling order is because Defendants did not file their motion to dismiss based on qualified immunity until after that deadline. Moreover, although Plaintiffs acknowledge that the affirmative defense of qualified immunity was included in Defendants' Answer, they argue the general boilerplate language used was insufficient to place Plaintiffs on notice of the nature and scope of the claims set forth in Defendants' later-filed motion.

■ The Court is persuaded by Plaintiffs' arguments. Defendants did not file their motion to dismiss based on qualified immunity until after the deadline for filing motions to amend. Moreover, the general boilerplate language used in the Answer—"plaintiffs claims are barred by the doctrines of official, qualified and/or absolute sovereign immunity"—is insufficient to place Plaintiffs on notice of the specific nature of Defendants' qualified immunity claim. Thus, Plaintiffs have demonstrated good cause for allowing the amendment out of time.

Significantly, the proposed amendments do not change Plaintiffs' tactics or their theory of the case, but instead simply seek to make various allegations more specific. The Court finds that the interests of justice are best served by allowing the proposed amendments and, accordingly, Plaintiffs' Motion to Amend (doc. 31) will be granted.

## II. Defendants' Motion for Judgment on the Pleadings

Defendants argue that judgment on the pleadings is proper with respect to each of the following claims alleged by Plaintiffs:

- Claims against the Kansas City, Kansas Fire Department (Counts III and IV), because such entity is not subject to being sued under Kansas law;
- Claims against Mots in his official capacity (Count III), because there is no legal distinction between Mots in his official capacity and the Unified Government, which is also a named defendant in this lawsuit;
- All claims brought pursuant to 42 U.S.C.A. § 1983 (Counts II, III and IV), because the Complaint fails to allege facts establishing a violation of substantive due process under that statute; and
- The claim against Mots in his individual capacity (Count II), because he is protected from suit for such a claim under the doctrine of qualified immunity.

Plaintiffs concede in their responsive briefing that claims against the Kansas City, Kansas Fire Department in Counts III and IV and claims against Mots in his official capacity in Count III should be dismissed. Accordingly, the Court will dismiss the referenced claims and address only the two issues remaining before the Court: (1) Whether Plaintiffs have alleged facts establishing a violation of substantive due process under 42 U.S.C. § 1983; and (2) Whether Mots is protected from suit in his individual capacity under the doctrine of qualified immunity. After setting forth the applicable law and the relevant factual background, the Court will address each of these disputed issues in turn.

## A. Applicable Law

■ A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is governed by the same standards as a motion

to dismiss under Rule 12(b)(6).[9] Such a motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief."[10] or when an issue of law is dispositive.[11] The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff.[12] The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[13] Although plaintiffs need not precisely state each element of their claims, they must plead minimal factual allegations on those material elements that must be proved.[14]

## B. Relevant Factual Background

The factual allegations within Plaintiffs' First Amended Complaint are as follows: On or about September 30, 1998, at approximately 7:40 p.m., Defendant Mots was driving a fire engine in a westbound direction on Central Avenue approaching the intersection of Central Avenue and 18th Street in Kansas City, Kansas. As Defendant Mots approached and entered the intersection, the stoplight was red. At this same time, Becerra was traveling southbound on 18th Street approaching the intersection with Central Avenue in Kansas City, Kansas. As he approached and entered the intersection, Becerra had a green light. The fire engine subsequent-

ly collided with the automobile in the middle of the intersection, with the front-end of the fire engine striking the driver's side of the automobile.

Plaintiffs specifically allege in their First Amended Complaint that, before colliding with the vehicle driven by Becerra,

- Defendant Mots chose the route that he would follow to take him to his destination, including the route to and through the subject intersection, when such route was not necessary to accomplish the response goal;
- Defendant Mots knew that the call to which he was responding did not require him to drive the fire engine into the intersection, and through the red light, at high speed;
- Defendant Mots knew that his conduct in driving the fire engine into the intersection and through the red light at high speed created a significant risk and likelihood of serious injury and death to foreseeable motorists in the vicinity who might not be aware of the presence of the fire engine;
- Defendant Mots could see the red light for a significant distance as he approached the subject intersection, and had an opportunity to deliberate regarding his subsequent operation of the fire engine;
- Defendant Mots either failed to deliberate regarding his operation of the fire engine, or made deliberate decisions to place Becerra and other similarly-situat-

---

**9.** *Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522, 528 (10th Cir.1992); *Sims v. Unified Gov't of Wyandotte Cty.,* 120 F.Supp.2d 938, 943 (D.Kan.2000).

**10.** *Poole v. Cty. of Otero,* 271 F.3d 955, 957 (10th Cir.2001) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

**11.** *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

**12.** *Smith v. Plati,* 258 F.3d 1167, 1174 (10th Cir.2001).

**13.** *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

**14.** *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

ed persons at significant risk and likelihood of serious injury and death;

● Defendant Mots failed to slow the fire engine and, in fact, accelerated the fire engine into and through the intersection at high speed;

● Defendant Mots' failure to slow the fire engine, and acceleration of the fire engine into and through the intersection at high speed, under the circumstances, violated almost every applicable and generally-accepted rule, regulation, standard, guideline and/or procedure for the operation of emergency response vehicles under the existing circumstances; and

Plaintiffs further allege Becerra sustained serious injuries as a result of this collision and that these injuries ultimately led to his death on or about October 7, 2000.

## C. Discussion

*(1) Whether Plaintiffs have alleged facts establishing a violation of substantive due process under 42 U.S.C. § 1983*

■ In their analysis, both parties utilized the familiar "shock the conscience" standard to determine if Plaintiffs sufficiently alleged facts which, if proven, state a substantive due process claim. Notably, "[t]he Due Process Clause 'is not a guarantee against incorrect or ill-advised [government] decisions.' "[15] Rather, the Due Process Clause "was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.' "[16] Accordingly, conduct that is arbitrary or conduct that "shocks the conscience" in a constitutional sense are the only governmental actions that can form the basis for a substantive due process claim.[17]

■ "To satisfy the 'shock the conscience' standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."[18] "The level of conduct required to satisfy this additional requirement cannot precisely be defined, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct."[19]

The United States Supreme Court case of *County of Sacramento v. Lewis*[20] is one such step in that evolution. The issue in *Lewis* was whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender. The Court held in such a situation that "only a purpose to cause harm unrelated to the legitimate object of arrest" would amount to arbitrary conduct shocking to the conscience, thereby creating substantive due process liability.[21] In

**15.** *Collins v. City of Harker Heights Tex.*, 503 U.S. 115, 129, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (quoting *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

**16.** *Id.* at 126, 112 S.Ct. 1061 (quoting *DeShaney v. Winnebago Cty. Dept. of Soc. Servs.*, 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (quotations omitted)).

**17.** *Id.* at 116, 112 S.Ct. 1061.

**18.** *Uhlrig v. Harder*, 64 F.3d 567, 571 (10th Cir.1995).

**19.** *Id.*

**20.** 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

**21.** *Lewis*, 523 U.S. at 836, 118 S.Ct. 1708.

coming to this holding, the Court compared negligent conduct, which is "categorically beneath the constitutional due process threshold," [22] to conduct that deliberately intends to injure, which is unjustified by any government interest. [23]

Plaintiffs' claims as alleged in the First Amended Complaint do not appear to fall at either end of this culpability spectrum. Rather, Plaintiffs' claims of reckless/deliberate indifference fall within the middle range. Nevertheless, the United States Supreme Court "recognized the possibility that some official acts in [the middle] range may be actionable under the Fourteenth Amendment." [24] In such middle-range cases, the totality of the facts in a given case, combined with circumstance and context, become critical factors to use in evaluating behavior of government actors that amounts to more than negligence but less than intent to harm.

 Official acts in the middle range are particularly vulnerable to liability when defendants have an opportunity to deliberate:

> [L]iability for deliberate indifference to [an individual's] welfare rests upon the luxury enjoyed by ... officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking. But when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the

shock that implicated "the large concerns of the governors and the governed." [25]

Hence, the standard of fault is necessarily influenced by the state actor's immediate circumstances and, where there is time for thoughtful deliberation, defendants are held to a higher standard—reckless or deliberate indifference. Conversely, where circumstances necessitate split second judgments, the Court has required a plaintiff to demonstrate a much higher standard of fault—an actual purpose to cause harm—in order to establish liability.

In their First Amended Complaint, Plaintiffs allege the standard for finding Defendants liable is deliberate indifference, because Defendants created a dangerous situation, enjoyed the luxury of making an unhurried judgment, had the chance for repeated reflection largely uncomplicated by competing obligations and nevertheless took action that at best sanctioned, and at worst intended, Becerra's injuries and then his death. Plaintiffs argue that under this deliberate indifference standard, their pleadings sufficiently allege facts that could establish a violation of substantive due process under 42 U.S.C. § 1983, and thus the pending motion to dismiss should be denied.

Conversely, Defendants allege the standard for finding liability is "purpose to cause harm," because the dangerous situation was created not by Defendants, but because the fire truck was responding to an emergency fire call, which necessitated split second judgments by the driver of the fire truck in order to reach the scene of the fire as soon as possible. Defendants

---

22. *Id.* at 848, 118 S.Ct. 1708 (citing *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

23. *Id.* at 849 (quoting *Daniels*, 474 U.S. at 331, 106 S.Ct. 662 ("Historically, this guarantee of due process has been applied to deliber-

ate decisions of government officials to deprive a person of life, liberty, or property.")).

24. *Id.* at 849.

25. *Id.* at 853 (citation omitted).

argue that under this heightened standard, Plaintiffs' claims for substantive due process violations must be dismissed, because Plaintiffs failed to allege in their Amended Complaint—let alone set forth any facts in their Amended Complaint—that Defendants intended to cause the referenced harm.

In reviewing the allegations set forth in the First Amended Complaint, Plaintiffs contend that, before colliding with the vehicle driven by Becerra,

• Defendant Mots chose the route that he would follow to take him to his destination, including the route to and through the subject intersection, when such route was not necessary to accomplish the response goal;

• Defendant Mots knew that the call to which he was responding did not require him to drive the fire engine into the intersection, and through the red light, at high speed;

• Defendant Mots knew that his conduct in driving the fire engine into the intersection and through the red light at high speed created a significant risk and likelihood of serious injury and death to foreseeable motorists in the vicinity who might not be aware of the presence of the fire engine;

• Defendant Mots could see the red light for a significant distance as he approached the subject intersection, and had an opportunity to deliberate regarding his subsequent operation of the fire engine;

• Defendant Mots either failed to deliberate regarding his operation of the fire engine, or made deliberate decisions to place Becerra and other similarly-situated persons at significant risk and likelihood of serious injury and death;

• Defendant Mots failed to slow the fire engine and, in fact, accelerated the fire engine into and through the intersection at high speed;

• Defendant Mots' failure to slow the fire engine, and acceleration of the fire engine into and through the intersection at high speed, under the circumstances, violated almost every applicable and generally-accepted rule, regulation, standard, guideline and/or procedure for the operation of emergency response vehicles under the existing circumstances; and

■■■ The Court finds that these precise allegations, if ultimately proved, rise to the level of conduct that would shock the conscience and thus establish a violation of substantive due process under 42 U.S.C. § 1983. The Court cannot say, based on the allegations pled in the First Amended Complaint, that it appears beyond a doubt that Plaintiffs can prove no facts to support these allegations. Defendants may very well be able to obtain summary judgment on the claim when the facts are more fully developed; however, it would be premature for the Court to dismiss the claim at this point in time. Accordingly, the Court concludes that under the applicable motion to dismiss standard, Plaintiffs sufficiently has stated a claim for violation of substantive due process under 42 U.S.C. § 1983.

*(2) Whether Mots is protected from suit in his individual capacity under the doctrine of qualified immunity'*

■■■ Defendant Mots argues that he is entitled to qualified immunity because his conduct violated no clearly established right of Plaintiffs. Qualified immunity shields an individual government official performing discretionary functions from liability for civil damages insofar as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[26]

**26.** *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citations omitted).

██ For purposes of a motion to dismiss, the Court conducts a two-part inquiry to determine whether a defendant is entitled to qualified immunity. First, the Court must determine whether the plaintiff sufficiently has alleged a violation of federal law.[27] If the plaintiff's complaint adequately alleges such a violation, the Court then examines whether "the right was sufficiently clear that a reasonable official would have understood that his conduct violated the right."[28] "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[29] The concept of clearly established law, however, should not be applied too literally.[30] A case presenting the exact fact situation at hand is not required in order to give parties notice of what constitutes actionable conduct; the parties are required only to make a reasonable application of existing law to their own circumstances.[31]

██ Here, the Court already has determined that Plaintiffs' Amended Complaint sufficiently has stated a claim for violation of substantive due process under 42 U.S.C. § 1983. The Court, therefore, turns directly to the issue of whether those rights were sufficiently clear that Defendant Mots should have understood that his conduct violated them. As to the conduct alleged, Plaintiffs maintain Defendant Mots recklessly drove his fire engine at excessive speed, into and through a busy and congested five-way intersection, against a red light, so as to cause a fatal collision with the vehicle driven by Becerra. Plaintiffs also maintain the call to which Defendant Mots was responding did not require such recklessness and that, prior to entering the intersection, Defendant Mots had a reasonable opportunity to deliberate regarding the operation of his fire engine in this manner and he either failed to deliberate or, alternatively, he made several deliberate decisions in furtherance of his conduct. Moreover, Plaintiffs contend Defendant Mots' operation of his fire engine in the described manner violated clear standards, procedures and regulations.

Based on Supreme Court precedent, and these specific facts as alleged by Plaintiffs in their Amended Complaint, the Court finds Becerra's constitutional rights should have been sufficiently clear to Defendant Mots for him to have understood that his conduct—as alleged—violated them.[32] De-

---

27. *Currier v. Doran,* 242 F.3d 905, 917 (10th Cir.2001) (citations omitted).

28. *Id.* at 923 (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

29. *Medina v. City and Cty. of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992) (citation omitted).

30. *Sh. A. as Parent and Next Friend of J.A. v. Tucumcari Municipal Schools,* 321 F.3d 1285, 1288 (10th Cir.2003) (citing *Johnson v. Martin,* 195 F.3d 1208, 1216 (10th Cir.1999)).

31. *Id.*

32. *See Cty. of Sacramento v. Lewis,* 523 U.S. 833, 853, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (explaining that "liability for deliberate indifference to [an individual's] welfare rests upon the luxury enjoyed by ... officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking. But when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicated the large concerns of the governors and the governed." (citation omitted)).

fendant Mots, therefore, is not entitled to qualified immunity at this stage of the litigation.

Accordingly, it is hereby ordered that

(1) Plaintiffs' Motion for Leave to File First Amended Petition (doc. 31) is granted and Plaintiffs shall electronically file and serve such First Amended Petition on or before *August 1, 2003;*

(2) Defendants' Motion to Dismiss claims against the Kansas City, Kansas Fire Department (Counts III and IV), because such entity is not subject to being sued under Kansas law, is granted without objection from Plaintiffs;

(3) Defendants' Motion to Dismiss claims against Mots in his official capacity (Count III), because there is no legal distinction between Mots in his official capacity and the Unified Government, which is also a named defendant in this lawsuit is granted without objection from Plaintiffs;

(4) Defendants' Motion to Dismiss all claims brought pursuant to 42 U.S.C.A. § 1983 (Counts II, III and IV) is denied; and

(5) Defendants' Motion to Dismiss the claim against Mots in his individual capacity (Count II) is denied.

IT IS SO ORDERED.